ROBERT C. STORRIE v. HOUSTON CITY STREET RAILWAY COMPANY.

No. 673. Decided June 13, 1898.

**1. City—Street Improvement—Contract and Charter Construed.**

A city provided for paving streets under a contract embracing resolutions by the city council declaring the work necessary and providing that the cost should be wholly defrayed by the owners of lots, etc., abutting upon the portions of the streets to be improved, as provided for in a section of its charter, which section, in addition to the provision for liability of owners of abutting lots, also made street railway companies liable for the cost of improving the portions of the streets occupied by them. Held, construing the contract with the provisions of the charter, that it imposed the liability for the cost of paving the portion of the streets between the tracks and rails of the street railway company upon such company and not upon the abutting lot owners. (Pp. 136, 137.)

**2. Constitution—Taxation—Local Assessments.**

The limitation in section 3, article 48, of the Constitution upon the purposes for which taxes or burdens may be imposed, applies to the Legislature in the administration of the State government, but does not prohibit it from conferring upon a municipal corporation the power to make local improvements by means of local assessments upon property holders benefited. (Pp. 137-139.)

**3. Same—Franchise—Impairing Contract.**

The franchises granted a street railway company are, by Constitution, article 1, section 17, subject to legislative control, and a city charter increasing the liability which may be imposed upon a street railway company for cost of street improvements is not unconstitutional as against the rights of a mortgagee of such company acquired prior to such increase of liability. (Pp. 140-142.)

**4. Charter Construed—Local Assessments—Certificate—Interest.**

Construing sections 23c, 23e, 23f of the charter of the city of Houston—providing for the making of rolls showing the lots, etc., to be made liable for the cost of local improvements and their proportion of the costs and for issuing to the contractor certificates therefor bearing more than the statutory rate of interest—Held, that such provisions were applicable to the property of a street railway company, though not capable of the description required in such rolls, and that the higher rate of interest was collectible on certificates so given. (Pp. 142-147.)

**5. Statutory Construction.**

The intention of the Legislature is the aim of statutory construction, and where, though not expressed, it is clearly manifested by implication from the language used, it should be given effect. (P. 144.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Harris County.

Storrie sued the street railway company and obtained judgment, from which the company appealed. The appellate court reversed, reformed, and rendered the judgment, and both parties obtained writs of error.

*Lanier, Kirby & Martin* and *Hume & Kleberg,* for plaintiffs in error Houston City Street Railway Company et al.—The District Court erred in overruling the general demurrer of the defendants. Act April, 1891, amending charter of city of Houston, secs. 23a, 23g; Special Laws 1891, 79-88; Railway v. Park Commissioners, 11 Ill. App., 562; O'Reilley v. City of Kingston, 114 N. Y., 449; Koons v. Lucas, 52 Iowa, 181; Kuehner v. City of Freeport, 32 N. E. Rep., 372; Storrie v. Cortes, 90 Texas, 283; Taylor v. Boyd, 63 Texas, 533; Transportation Co. v. Boyd, 67 Texas, 153; 25 Am. and Eng. Enc. of Law, 516-527; 2 Dill. Mun. Corp., 4 ed., sec. 761; 24 Am. and Eng. Enc. of Law, 71, 72.

The District Court erred in overruling the general demurrer of the defendants, because the resolutions, the basis of appellee's cause of action, as well as the contract made by him with the city, both provide that he shall be paid in certificates issued against the lot or lots, block or blocks, or other tract of land abutting on the street. And the street railway of the Houston City Street Railway Company, located in the middle of the street, and its franchises therein, are not abutting land, or lots or blocks within the meaning of the charter, nor said resolutions, nor said contract. Same authorities.

The entire charter of the city of Houston concerning paving is unconstitutional and void. Tel. Co. v. State, 62 Texas, 630, and authorities therein cited.

The court erred in refusing to sustain the following special exception of the defendants in plaintiff's petition: "Defendants further specially except to all that portion of plaintiff's claim of 8 per cent and 10 per cent interest" as being violative of article 3, section 56, of the Constitution. Const., art. 3, sec. 56; art. 3, sec. 48; Violett v. Alexandria, 53 Am. St. Rep., 825; Tel. Co. v. State, 62 Texas, 630.

The District Court erred in admitting in evidence the alleged contract made by the plaintiff, Storrie, with the city of Houston, and in considering same in making up its verdict and judgment, in this: that in said contract it is expressed that the said Storrie should be paid in paving certificates against the abutting property owners; the said contract does not provide that the plaintiff, Storrie, is to have any claim against the property of the street railway company at all located in the streets to be improved.

The court erred in admitting in evidence over the defendant's objections the alleged pavement certificates, copies of which are attached to plaintiff's first amended original petition, in this: because there is no authority in the charter of the city of Houston authorizing the city

council to issue paving certificates against property located in the street; (2) that plaintiff's contract provides that he shall be paid for the paving done by certificates issued against land owners whose lands or lots abut on the street; (3) because the resolutions passed by the city council authorizing the paving to be done, provide that such paving should be paid for in certificates issued against abutting lot or block owners on the streets to be paved; (4) said certificates do not describe any property on which a lien is sought to be foreclosed; (5) the name of the Houston City Street Railway Company does not appear therein; (6) said certificates are irrelevant and immaterial and void on their face. Charter city of Houston, 1891; Anderson v. Post, 38 S. W. Rep., 283.

The District Court erred in holding the alleged paving certificates valid, and in assessing 10 per cent interest on the amount of principal sued for, and in decreeing that the judgment should bear 10 per cent interest from its date. Const., art. 3, sec. 56; Charter city of Houston, 1891; Violett v. Alexandria, 92 Va., 561; Anderson v. Post, 38 S. W. Rep., 283.

The District Court erred in holding the resolutions providing for paving to be done, under plaintiff's contract made with the city, and the rolls of ownership of property, valid as against the Houston City Street Railway Company, and in not holding the entire proceedings as against the Houston City Street Railway Company void. The resolutions provide that the cost of paving shall be borne by the owners of abutting lots or blocks or other tract of land, when not divided into lots and blocks. The contract made by Storrie, appellee, with the Mayor expressly provides that he should be paid in paving certificates against the abutting lots or other tract of land, when not divided into lots as provided in said resolutions. Violett v. Alexandria, 53 Am. St. Rep., 825, 92 Va., 561; City Charter of Houston, 1891; Anderson v. Post, 38 S. W. Rep., 283.

The tracks of the street railway company located in the center of the street, its poles in the street, its trolley wires and franchises, are not lots, blocks, or other tract of land not divided into lots and blocks within the meaning of the charter of the city of Houston. Violett v. Alexandria, 92 Va., 561; Anderson v. Post, 38 S. W. Rep., 283.

The District Court erred in holding that the lien of the plaintiff, Storrie, against the property of the Houston City Street Railway Company is not subordinate to the lien of the defendants the American Loan and Trust Company, and the purchasers of the property. Bibbins v. Clark, 29 Law. Rep. Ann., 278; Pittsburg's Appeal, 40 Pa., 455; Sullivan v. Clifton, 20 Law Rep. Ann., 719; Higgins v. Bordages, 88 Texas, 458; Insurance Co. v. Bank, 67 N. W. Rep., 449; Waco v. Prather, 37 S. W. Rep., 312; Flewellin v. Proetzel, 80 Texas, 191; Chapman v. Bank, 22 Law. Rep. Ann., 78; Fletcher v. Kelly, 88 Iowa, 475; Rankin v. Scott, 12 Wheat., 177; Howard v. Railway, 101, U. S., 837; Cincinnati v. Morgan, 3 Wall., 275; Wabash v. Beers, 2 Black., 448; Conard v. Insurance Co., 1 Pet., 386.

The District Court erred in not holding the entire charter of the city of Houston, in so far as it provides for letting paving contracts, unconstitutional and void, in this: that at the time of the passage of said charter by the Legislature, and ever since, the facts show that one-third of the property on both sides of each and every street in the city of Houston was and is the homestead of the heads of families, and against which no lien for paving assessments could be fixed. Tel. Co. v. State, 62 Texas, 630, and authorities there cited.

The judgment of the District Court is contrary to article 8, section 1, of the Constitution, providing that taxation shall be equal and uniform, and is contrary to article 3, section 48, of the Constitution, to the effect that the Legislature shall not have the right to impose burdens upon the people except to raise revenue sufficient for the economical administration of the government. Const., art. 3, secs. 48, 56.

*Ewing & Ring,* for Robert C. Storrie.—Since the street railway company was clearly made liable for its proportion of the cost (charter, section 23a), and since all the charter prerequisites or jurisdictional conditions to letting of the contract for and performance of the work were indisputably applicable to the street railway company (charter, sections 23b and 23c), and since a proper assessment of the cost was made by the city council, according to the measure of liability prescribed by the charter, the sequent is, that the street railway company was liable for such cost, in the manner and by the measure prescribed by the certificates, the street railroad being a "tract of land" within the meaning of the provisions relating to division of installments and issuance of certificates (charter, sections 23e and f). Suth. Stat. Const., sec. 216; Black's Law Dict., verb. "utile," etc., and p. 12, verb. "abut," and pp. 685, 1180; Kuehner v. City of Freeport, 143 Ill., 104, 32 N. E. Rep., 376; Charter of city of Houston, secs. 23a, 23b, 23c, 23d, 23f, Spec. Laws 22d Leg., 1891, pp. 79-86; Adams v. Fisher, 63 Texas, 657; City of Brenham v. Waterworks Co., 67 Texas, 553; 12 Am. and Eng. Enc. of Law, 655; 3 C. E. Green (N. J.), 91; People v. Cassity, 46 N. Y., 46; Welty on Assessments, secs. 200, 202; Appeal of Railway, 32 Cal., 499; Cent. Law Jour., Jan., 1897, citing 20 So. Rep., 975; New Haven v. Railway, 38 Conn., 422; Cool. on Tax., 651, note 1.

Inasmuch as the work was performed after compliance with every condition precedent prescribed by the charter, and the liability herein asserted shown by the roll of ownership, whether rightly or not, the street railway company became liable for the amount here sued for, first, because its railroad property being a tract of land, it was in any event, by the express language of the charter, liable for such sum as ought to have been assessed against it; and second, because its railroad property, not being a tract of land, it was estopped by the terms of the charter from denying the liability shown against it by the assessment roll, having failed, after due personal notice, to make objection or seek

relief in the exclusive statutory mode prescribed. Charter city of Houston, sec. 23d, Spec. Laws 22d Leg., 1891, p. 83.

The provision of the charter (section 23a) in relation to collection and credit of a portion of the cost from street railways, by its express language and the reason of the thing, applies only to those companies whose incipient occupancy of the street is after its improvement; hence the claim of liability only to the city might, with equal show of reason, be made by an abutting lot owner. Besides, the cost of the portion of the streets in question occupied by the street railway company was not charged to abutting lot owners, and was hence, in effect, credited by deduction, and since the issuance of the certificates by the city to Storrie operated, in effect, an equitable assignment of the demand, it does not lie in the mouth of the street railway, in any view, to complain. Charter city of Houston, sec. 23a, Spec. Laws 22d Leg., 1891, pp. 79, 80; Fairbanks v. Sargent (N. Y.), 6 Law. Rep. Ann., 477; Harris County v. Campbell, 68 Texas, 22, 28.

The contention that a portion of the assessable property being not subject to the lien as homestead, the act constituting the charter, on the entire subject of street improvements, is void because of class legislation, for several reasons can not prevail: first, because the validity of that and similar acts has been too often affirmed to be now denied; second, because not upon the face of the act, but by extrinsic evidence only, is any of the property relieved from the burden of the lien, so that the act might, for anything apparent therein to the contrary, be applied to only nonhomestead portions of streets, and the fact that it had been otherwise applied in a given instance could not affect its validity; third, because all the assessable owners bear alike the burden of the assessment as a personal demand, and only the lien, a mere incident of the principal thing, is at all affected by homestead exemption; fourth, because the burden of the assessment falls upon all alike, under similar circumstances and conditions, the homesteaders being all affected alike, and the non-homesteaders being also all affected alike; fifth, because, by the rule of aportionment prescribed by the charter, the escape of some from the burden does not and could not increase the lawful burden of the others; and sixth, because it is competent for the Legislature, from high motives of public policy, as in the case of revenue taxes, to exempt certain classes of property, such as homesteads, without affecting the validity of assessments on other property. Storrie v. Cortes, 90 Texas, 283; Connor v. City of Paris, 87 Texas, 37; Tel. Co. v. State, 62 Texas, 633, 634; Insurance Co. v. Chowning, 86 Texas, 654, 657; Cool. on Tax., 171, 202.

The contention that the act is violative of certain provisions of the Constitution relating to revenue taxes, to wit, article 8, section 1, and article 3, section 48, is without merit, as foreclosed by previous adjudication. Conner v. City of Paris, 87 Texas, 32, 37, and cases cited; Taylor v. Boyd, 63 Texas, 533; Higgins v. Bordages, 88 Texas, 458, 461, et seq., and cases cited; Transportation Co. v. Boyd, 67 Texas, 156; Adams v.

Fisher, 63 Texas, 654; Roundtree v. City, 42 Texas, 613; Allen v. City, 51 Texas, 302; City v. Heard, 54 Texas, 420; City v. Loonie, 54 Texas, 517; Highland v. City, 54 Texas, 527; Storrie v. Cortes, 90 Texas, 283; Lovenberg v. City of Galveston, 42 S. W. Rep., 1024; Cool. on Tax., 2 ed., 207, 130; Baltimore v. Cemetery Co., 7 Md., 517; City Cemetery v. Buffalo, 46 N. Y., 506; Patterson v. Society, 24 N. J., 385; State v. Newark, 27 N. J., 185; Sheehan v. Hospital, 50 Mo., 155; Bridgeport v. Railway, 36 Conn., 255; Suth. Stat. Const., sec. 218, 329; Eureka Case, 4 Sawy., 302.

It is no longer open to controversy that the cited section of the Constitution is without application to cities, like the city of Houston, of over 10,000 inhabitants, inquiry into the point being shut out by the cases cited below. City of Dallas v. Electric Co., 83 Texas, 243, 245; Savings and Real Estate Investment Association v. Pierre's Heirs, 31 S. W. Rep., 426.

The improvement lien being laid upon the property itself, in the exercise of the sovereign right of taxation, for the public benefit, was essentially paramount to any individual interest, absolute or qualified, and hence was superior to the qualified interest of the mortgage, the improvement act being substantially in force when the mortgage was given. Railway v. Drainage District, 134 Ill., 384; Savings Co. v. Jersey City, 113 U. S., 506; Railway v. District Commrs., 134 Ill., 384, 400; Charter of city of Houston, 1889, Spec. Laws 21st Leg., p. 100; Elliott on Roads and Streets, 433; Violett v. Alexandria, 92 Va., 567.

*Hutcheson, Campbell & Myer*, on behalf of clients interested in other cases involving the constitutional question, filed an argument and citation of authorities in support of the following proposition:

The making of an improvement on a street and charging the entire cost of the work done in front of a particular lot, block, or tract of land, on the owner and the land itself exclusively, and without any sort of proportion or apportionment between him and it and the public or adjacent property or property holders on the same street, is such a burden imposed on land and citizen as can not be done in this State, because of the provision of article 3, section 48, of the Constitution. 6 Am. and Eng. Enc. of Law, 921 (new series); Greencastle v. Black, 5 Ind., 570; Newell v. People, 7 N. Y., 9; Mellinger v. Houston, 68 Texas, 44; Railway v. Rambolt, 67 Texas, 657; Gibbons v. Ogden, 9 Wheat., 188; Sturges v. Crowinshield, 4 Wheat., 122; Denn v. Reid, 10 Pet., 524; Carroll v. State, 58 Ala., 396; Beardstown v. Virginia, 76 Ill., 34; People v. Railway, 24 N. Y., 487; Smith v. Thursby, 28 Md., 269; Cool. Const. Lim., 2 ed., 55; Story on Con., sec. 400.

BROWN, Associate Justice.—This suit was instituted October 23, 1894, by Robert C. Storrie against the Houston City Railway Company and the American Loan and Trust Company of Omaha, Nebraska, and subsequently John H. Kirby as receiver of the said street railway com-

pany was made a party to the suit. The object of the suit was to recover from the street railway company the costs of paving the streets named in the petition between the rails of the said railroad and six inches on each side thereof, which paving was done by Storrie under a contract with the city of Houston, and for which he received improvement certificates, upon which the suit was instituted. The petition, among other things, alleged that the plaintiff became contractor under the proper proceedings had by the city council under the charter of the city and performed the work, receiving from the city the certificates mentioned in the petition, and that the amounts of the certificates were the cost of the work done in grading and paving the portions of the street occupied by and used by the defendant for railroad purposes, that is, the space between its tracks and six inches over. From the statement made by the Court of Civil Appeals we state the following facts necessary to the decision of questions raised in this court:

Prior to November 5, 1883, the city of Houston was chartered by a special law, and on that date, by ordinance duly adopted, granted to the Houston City Street Railway Company the right to lay its tracks on the streets of the city, to continue for thirty years.

On October 23, 1890, that ordinance was amended so as to authorize the street railway company to use electric power in propelling its cars, in consideration of which the company was to pay for paving the streets for six inches outside of its rails on each side of the track in addition to the requirements of the charter of the city by which it was to pay for paving the space between the rails. The company accepted the terms of the ordinance and operated its cars by electricity.

On September 20, 1890, the street railway company gave a deed of trust upon its property and franchises to the American Loan and Trust Company of Omaha, Nebraska, to secure the bonds of the said railway company. During the pendency of this suit the loan and trust company brought a suit in the United States Circuit Court at Galveston against the railway company to foreclose the deed of trust, and during the pendency of that suit John H: Kirby was appointed receiver. The city of Houston was not a party to the suit in the United States Circuit Court. The mortgage was by the United States Circuit Court foreclosed and the property sold under the decree of that court, A. H. Hayward being the purchaser at that sale.

In accordance with the requirements of the charter the city council of Houston passed proper resolutions by the requisite vote for improving the streets in question, and entered into a contract with plaintiff Storrie in such manner that if the property of the street railway company was included within the terms of the contract the company is liable for the costs of making the improvement under that contract and a lien existed upon the property and franchises by virtue of the certificates issued against the said company to the contractor.

It is uncontroverted that the contractor Storrie did the work at the instance of the city of Houston, and that the certificates sued upon were

issued by the city against the railway company and represent the cost of the work done upon the streets between the rails of the said railway company and six inches beyond such rail, and that the work was finished when the certificates were issued.

One-third of the lands, lots, and blocks fronting the streets improved by the city were and are homesteads.

Upon trial in the District Court before the judge a judgment was rendered in favor of the plaintiff against the street railway company for the amount of the certificates with interest thereon at 8 per cent, and against the other parties and the street railway company foreclosing the lien upon the said street railway and its franchises, which judgment the Court of Civil Appeals reversed, and rendered judgment against the railway company for the amount of the claim with 6 per cent interest instead of 8 per cent. The court foreclosed $18,277.94 of the judgment and the costs of the District Court upon the property of the railway company as described in the petition against all of the defendants, and directed an order of sale to be issued thereon.

Both parties presented to this court applications for writs of error, which were granted. The application of Storrie was granted for cause, but the application of the street car company, the loan and trust company, and J. H. Kirby was granted because Storrie's application had been allowed, and it was desired to have the whole case before this court.

The petition of the street car company, the loan and trust company, and Kirby presents quite a number of objections to the judgments of the District Court and the Court of Civil Appeals, which we have carefully examined and find no error committed against them requiring a reversal of the judgment. We will, however, briefly state our views upon two of the questions presented by that application.

It is contended (1) that the contract between the city of Houston and the contractor Storrie bound the abutting property owners to pay for the entire work of paving the streets; (2) that as to the loan and trust company the portion of the charter of the city of Houston which authorized the assessment in question is in violation of article 3, section 48, of the Constitution of the State of Texas.

In conformity to the requirements of its charter the city of Houston took all the steps necessary to reach the point of making a contract for the pavement of the streets. The law required that the necessity for such improvement should be declared by the city through a two-third vote of the whole number of aldermen elected, and in compliance with that requirement of the charter the city council by the necessary vote declared it to be necessary to pave specified portions of a number of streets which were designated in three separate resolutions; in each resolution the following was embraced: "That the cost of constructing said improvements, except as to street intersections, together with the cost of collection, shall be wholly defrayed by the owner or owners of the lot or lots, block or blocks, or tract of land when not laid out into lots and blocks, abutting upon the said portions of said streets to be improved,

as provided for in section 23a, et seq., of the charter of the city of Houston; and said improvements shall be paid for in five annual installments."
Storrie entered into a contract with the city of Houston to pave the streets named, making the resolutions a part of the contract.

It will be observed that the resolution above quoted refers to section 23a of the charter of the city as fixing the manner in which the improvement named shall be paid for. Section 23a, after providing for the manner of reaching the making of a contract for street improvements, contains these clauses: "And the costs of all such improvements shall be a tax and charge against the person or persons owning such lots, blocks, or tracts of land at the time such tax or any portion thereof shall become due as to such lots, blocks, and tracks of land, and a lien and incumbrance upon the land itself, and said tax against the property owner may be collected and the lien upon the property foreclosed in any court having jurisdiction. * * * Provided, nothing in this act shall be construed to prevent the city council from constructing sewers and drains or making street improvements in whole or in part at the expense of the city should it be deemed advisable so to do. * * * Any railroad or street railway company shall be liable for the costs of grading, paving, or otherwise improving the portion of the street or intersection used or occupied by such railway company, and such costs shall be a lien upon the property and franchises of the company. The portion of a street occupied by any railroad or street railway company shall be deemed to mean all that portion of the same between the rails of all tracks laid and extending six inches beyond the outer edge of the rails of such road, and including the space between the double tracks and between the main track, side tracks, or turnouts." Construing the language of the resolution and that of section 23a of the charter just quoted together, it means that the street railway company should pay for all the pavement upon such streets lying between the rails of its tracks, and between its different tracks, side tracks, and turnouts, and that the remainder should be paid for by the owners of the property abutting upon the said streets on each side. Under the charter the city might have paid for a portion or all of the work itself, or, as it has done in this case, require the street car company and the abutting owners to pay the entire cost of the work. The word *"wholly,"* as used in the resolution above copied, does not refer to, nor mean, the entire surface of the street, but means the entire cost of that portion which was to be paid for by the property owners. The city council had no authority to make a contract by which the abutting property owners would be charged with the costs of paving the entire surface of the street when it was occupied in part by a street railway, and it will be presumed that the language used was intended to bind the parties in accordance with the terms of the law, which by the reference to section 23a was made a part of the contract itself.

On behalf of the street car company, counsel urged with earnestness and much force that the charter of the city of Houston, so far as it

authorizes the city council to make improvements upon the streets at the cost of the abutting property owners, is violative of the following section of our State Constitution: "The Legislature shall not have the right to levy taxes or impose burdens upon the people, except to raise revenue sufficient for the economical administration of the government, in which may be included the following purposes:

"The payment of all interest upon the bonded debt of the State;

"The erection and repairs of public buildings;

"The benefit of the sinking fund, which shall not be more than two per centum of the public debt; and for the payment of the present floating debt of the State, including matured bonds, for the payment of which the sinking fund is inadequate;

"The support of public schools, in which shall be included colleges and universities established by the State, and the maintenance and support of the Agricultural and Mechanical College of Texas;

"The payment of the costs of assessing and collecting the revenue, and the payment of all officers, agents and employes of the State government, and all incidental expenses connected therewith;

"The support of the blind asylum, the deaf and dumb asylum and the insane asylum, the State cemetery, and the public grounds of the State;

"The enforcement of quarantine regulations on the coast of Texas;

"The protection of the frontier." Art. 3, sec. 48.

Article 3 of the Constitution prescribes the organization of the Legislature of the State, the qualification of its members and the like, the proceedings by which its business is to be transacted, and expresses certain requirements and limitations in the exercise of legislative functions. Section 48 above quoted falls under the subdivision of article 3 designated in the Constitution as *Requirements* and *Limitations*." The requirements express the commands of the people to the Legislature to pass laws to accomplish certain purposes which the people determined upon as a part of the policy of the State; for example, we quote the following sections:

"Sec. 46. The Legislature shall, at its first session after the adoption of this Constitution, enact effective vagrant laws.

"Sec. 47. The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises, or other evasions involving the lottery principle, established or existing in other States."

These sections with many others show that the convention had in mind a number of topics upon which they were not willing to trust the Legislature to exercise its own judgment as to whether it should legislate or not, but commanded that in these instances laws shall be passed to accomplish the purposes named.

This part of the Constitution also embraces sections which prohibit the Legislature from doing certain acts. Some of these are prohibitions against the doing of things by the Legislature itself, and others prohibit that body from conferring authority upon municipal corporations to do

the things named therein. Section 48 embodies a prohibition against the exercise of the taxing power by the Legislature except for certain purposes named. The language, "the Legislature shall not have the right to levy taxes or impose burdens upon the people," etc., denies to the legislative department the right to exercise this power itself, and does not refer to any action by the Legislature which would confer such authority upon a municipal corporation. It limits the exercise of that power by the Legislature to raise revenue for the administration of the State government as distinguished from the administration of municipal government. The view that this section refers to "levying taxes and imposing burdens" by the Legislature, and to such burdens as are imposed with a view to the administration of the State government, is strongly supported by the character of the objects enumerated for which the revenue may be raised, all of which pertain to the administration of the State government, none of which could be committed to local municipal control.

The following sections illustrate the care with which the framers of the Constitution guarded the people against what experience had shown to be hurtful policies on the part of municipal governments:

"Sec. 52. The Legislature shall have no power to authorize any county, city, town, or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value, in aid of or to any individual, association, or corporation whatsoever; or to become a stockholder in such corporation, association, or company.

"Sec. 53. The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee, or allowance to a public officer, agent, servant, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract made without authority of law."

The authority of counties, cities, and towns to levy taxes is carefully prescribed and limited by our Constitution, and the particularity with which the convention expressed in the Constitution those limitations upon the power of the Legislature to confer authority upon counties, towns, and cities, justifies the conclusion that it was not intended by the use of the general language employed in section 48 above quoted to prohibit the Legislature from conferring upon municipal corporations the power to improve streets at the expense of the property owners. The conclusion is irresistible that in adopting section 48 of article 3, the convention did not intend to take from the Legislature the well recognized power to grant to municipal corporations the right to improve public highways at the cost of the adjacent property which is supposed to be benefited thereby.

The Court of Civil Appeals reversed the judgment of the District Court and foreclosed the lien of the plaintiff Storrie upon the property of the street railway company for the cost of paving between the rails

of the street railroad, and reduced the interest from 8 per cent as prescribed in the charter of the city to 6 per cent. The amount of recovery is reduced and a lien denied for the cost of paving outside the rails.

Section 23a of the charter of the city of Houston provides in substance that any street railway company which occupies a part of a street, when it is determined to pave or otherwise improve it, shall be liable for the cost of such paving "between the rails of all tracks laid and extending six inches beyond the outer edge of the rails of such road and including the space between the double tracks and between the main track, side tracks, and turnouts." The claim of Storrie was for the cost of paving the street to the extent specified in the charter, and he is entitled to a lien upon the property for the whole cost of such pavement unless the proposition can be sustained that as to the loan and trust company the statute is unconstitutional so far as it adds to the liability of the railroad over and above what was authorized by the law at the time its mortgage was executed.

Article 1, section 17, of the Constitution of the State contains this provision: "No irrevocable or uncontrollable grant of special privileges or immunities shall be made, but all privileges and franchises granted by the Legislature or created under its authority shall be subject to the control thereof." This provision of the Constitution was in force at the time the street railway company acquired its right in the streets of Houston and before the mortgage of the trust company was executed. The rights of both the street railway company and the mortgage company were acquired subject to the control of the Legislature upon this question. The Legislature had the right to enact the law of 1891 amending the charter of Houston, by which the liability of the street car company for the cost of paving the street was enlarged; that act does not violate the Constitution of this State nor of the United States. Railway v. Sioux City, 138 U. S., 98; Law. Ed., book 34, 899; Street Railway v. Sioux City, 78 Iowa, 367; Railway v. Commissioners, 10 Law. Rep. Ann., 285; 2 Elliott on Railroads, sec. 789.

Mr. Elliott in his work on Railroads, section above cited, speaking of the liens of such assessments, says: "These liens are purely statutory, and their existence, force, and extent depend upon the terms of the statute creating them. Such liens are ordinarily superior to all liens except general taxes, and the authority of the Legislature to make them such is firmly established. The assessments being made on the theory that the property is benefited and enhanced in value in a sum equal to the amount of the assessment, no injury can result to other lienholders, such as mortgagees, mechanic lienholders, and the like."

The code of the State of Iowa contained the following section: "The articles of incorporation, by-laws, rules, and regulations of corporations organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged, or set aside by

law, and every franchise obtained, used, or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good." The Sioux City Street Railway Company, organized as a corporation under the general laws of that State and the city of Sioux City, by an ordinance regularly adopted by its council conferred upon that company the right to locate, construct, and operate a street railway upon and along certain streets of the city on terms stated in the ordinance, among which was that the said street railway company "shall pave or macadamize, in the time and manner directed, the space between the rails," etc. Under this ordinance the street railway was constructed. Afterwards the Legislature of Iowa passed an act granting additional powers to cities of the first-class with reference to improvement of streets, etc., in which was contained the following provision: "All railway companies and street railway companies in cities of the first class, as provided in section 1 of this act, shall be required to pave or repave between the rails and one foot outside of their rail at their own expense and cost." Subsequently the city paved the streets, and the street railway company paid for the cost of paving between the rails, but resisted the claim for the cost of paving outside of the rails. The Supreme Court of the State sustained the claim of the city and the case was removed to the Supreme Court of the United States, which affirmed the judgment of the State court. Mr. Justice Blatchford delivered the opinion of the court, in which he very carefully examined and discussed the constitutional question raised by the street railway company, and in the course of that discussion said:

"The company took its franchise subject to such legislation as the State might enact. This is plain from the provision of section 1090 of the code. The company took its charter subject to the provisions of that section. The general assembly deemed it necessary for the public good to require street railways to pay for the paving of one foot outside of the tracks, probably upon the view that it was right that they should be required to pave that part of the street which they used almost exclusively. It was not in the power of the city, by any contract with the company, to deprive the Legislature of the power of taxing the company.

"Under section 1090 of the Iowa code, the Legislature had the power not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise which the general assembly might deem necessary for the public good. Reservation of this power was a condition of the grant. The city council could make no arrangement with the company which would not be subject under that section to the superior power of the general assembly. * * *

"No question can arise as to the impairment of the obligation of the contract, when the company accepted all of its corporate powers subject to the reserve powers of the State to modify its charter and impose additional burdens upon the enjoyment of its franchise."

Not considering the fact that the street car company entered into the contract with the city by which it agreed to pay for the extra six inches, it could not resist the claim of the plaintiff in this case for the cost of paving the six inches outside of the rails, because the Legislature had the right under the Constitution to impose this additional burden upon its property. We can not understand how the loan and trust company which claims under a mortgage from the street car company could acquire a right superior to that which the mortgagor had. We know of no principle of law which would accord protection to a lien upon property when that protection would not be given to the owner. We think there can be no doubt under the authorities cited, and especially under the case of Sioux City Railway Company v. Sioux City, that the statute in question was valid, and if the street car company is liable to the plaintiff for the cost of paving the extra six inches, the claim must be enforced for the cost of paving to the full extent claimed against all of the defendants.

Section 23a of the charter of Houston as amended in the year 1891 empowers the city council by a vote of two-thirds of the members elected to declare the necessity for paving or otherwise improving any street of the city. The city has the power to make such improvement at its own cost, or partly at the cost of the city and partly at the cost of the property owners abutting upon such street and of any street railway company which may occupy any portion of the street to be improved, except that the city is required to pay for the paving of the intersections of streets. It is unnecessary for us to follow the different steps required to be taken before a contract could be made for such improvement, because there is no question in this case depending upon the proper performance of such acts. The contest begins with the construction of the contract which we have already disposed of.

The contract having been made with Storrie, section 23c of the charter required that the city engineer should from time to time prepare a roll or rolls "showing the number of lots, blocks, or tracts of land, when not divided into lots and blocks, fronting on the street, alley, avenue, or highway to be improved;   *   *   *   the name or names of the owner or owners of such lot or part of lot, block, or tract of land, if known to the city engineer, and if unknown to him it shall be so stated; the number of feet frontage of such lot, part of lot, block, or tract of land fronting on the portion of the street to be improved;   *   *   *   and the proportional cost of such lot, part of lot, block, or tract of land, and the total cost as ascertained and calculated by the city engineer of such improvements necessary to be borne by each, and to be paid by each owner of such property described in such roll." The city engineer was required to certify to the correctness of the roll, when it was to be submitted to the board of public works for their examination, and after being examined by the city attorney the law required the roll to be deposited with the secretary of the city, whose duty it was to publish a notice that the roll was placed with him, in some newspaper for four

days, and to give notice to each person whose name was placed upon the roll of the fact by mailing a copy of the notice to him at his postoffice address, if known. After the expiration of ten days from the first publication of that notice the city council was required to approve the roll, and each owner of property whose name was upon it had the right to file a petition with the city council asking a correction of any errors committed in the assessment made against him or in the description of his property. If the city council decided adversely to the claim of the owner, he could apply within five days from the time of the approval of the roll to any court having jurisdiction for a writ of injunction to prevent the enforcement of the assessment against him, but failing to make such application or to procure such writ he would be concluded by the action of the city council, except for fraud and collusion of which he was not aware and had no opportunity to ascertain.

Section 23e provides that after the rolls have been approved, if not otherwise directed by the city council, the sum assessed against each separate tract of land shall be divided by the city secretary into as many installments as possible, not exceeding ten; no installment to be less than $10, adding the interest for each year on the entire amount of nondue installments to the one falling due for that year; the first installment to become due five days after the approval of the roll of ownership, one of the remaining installments to become due on the same day of the month in each year thereafter until all should mature. The entire amount assessed against each tract of land would bear interest at the rate of 8 per cent per annum until maturity, each installment to bear interest at the rate of 10 per cent per annum after maturity. A failure to pay any installment of principal or interest when due "within sixty days of the time when suit shall have been entered on the same" would give to the party entitled to collect the indebtedness the right to declare all subsequent installments to be due. The owner of the property is accorded the right any time to pay the whole of the assessment to the holder of the certificate or to the city assessor and collector, who must notify the holder of the certificate or certificates, which would operate as a full discharge.

Section 23f empowers the secretary of the city, on the fifth day after the roll has been approved, to issue improvement certificates for the sum assessed against each property owner, for the amounts specified on the improvement roll, showing the number of lot or lots, block, or description of the property upon which said sum of money is a lien, the name of the person mentioned in said roll as the owner, and that such sum of money is a tax against the owner and a lien upon the property therein described.

It was held by the Court of Civil Appeals that the law did not require the street railway property to be placed upon the roll of ownership, and from this conclusion the further conclusion is reached that the certificates of indebtedness were improperly issued against it, and that the statutory rate of interest does not apply to that company. It is true that

the street car company is not mentioned by name among the items of property required to be placed upon the roll of ownership and a part of the description which is required to be given could not be made to apply to it. The descriptive matter required to be entered upon the roll applies fully to lots and blocks abutting on such streets, but the numbers do not apply to lands which abut upon the street and not divided into blocks and lots. Likewise the street railway property neither fronts upon the street nor has it numbers like lots and blocks, but it could be described upon the roll with the name of the owner and the amount assessed against it. We do not think it correct to hold that because all of the description is not applicable to the property in question it can not be properly placed upon the roll. Our statute requires, that in making the assessment of lands for taxes the statement shall set forth the name of the owner, the abstract number, the number of the survey, the name of the original grantee, and the number of the certificate. It has been held that to omit the abstract or certificate number renders the assessment void unless there is shown some good reason for such omission. Morgan v. Smith, 70 Texas, 641. Many surveys in Texas have no certificate number, and could not be described as required by the statutes, yet if the description which is applicable be placed in the statement it certainly would not be void for want of that which could not be applied to the subject.

It is claimed by counsel for Storrie that the words "tracts of land" can be properly construed to embrace the easement which the street railway company had in the streets, and the proposition we find well supported by good authority, but prefer to place our decision upon the broader basis that the intention of the Legislature in enacting the law shall govern, although it may appear to conflict with some of the language used in expressing that intention. Suth. on Stat. Const., secs. 218 and 246; Endl. on Interp. of Stat., sec. 72; Womack v. Womack, 17 Texas, 1; Stone v. Hill, 72 Texas, 543; Russell v. Farquhar, 55 Texas, 359; McInery v. Galveston, 58 Texas, 340; Insurance Co. v. State, 86 Texas, 268; Halbert v. Land and Live Stock Assn., 89 Texas, 230.

Mr. Sutherland in his work on Statutory Construction, section 218, says: "It is indispensable to a correct understanding of a statute to inquire first what is the subject of it,—what object is intended to be accomplished by it. When the subject matter is once clearly ascertained and its general intent, a key is found to all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intention."

In the case of Insurance Company v. State, above cited, the question was, whether the law then under consideration declared the acts mentioned by it to be unlawful so as to constitute an offense. In determining that point the court said: "It is true that while trusts are defined in the first section, nowhere, either in that or any other section, are they ex-

pressly declared unlawful. The following sections provide forfeitures for corporations and punishment for persons who 'violate any of the provisions' of the act, but they do not designate what shall constitute /a violation of its provisions in any direct terms. Confining ourselves to the letter of the law, there is a clear hiatus—a lack of connection in its provisions. * * * There is no express declaration that trusts were unlawful; the acts which are declared to constitute a trust are not expressly made punishable; nor is any act expressly declared to be a violation of the provisions of the statute; yet the language is sufficient, we think, to manifest unmistakably the intention of the Legislature to punish as offenses some of the acts defined in the first section; and it is but reasonable to conclude that the purpose was to subject them all to a like punishment. The intention of the Legislature is the aim of statutory construction, and where, though not expressed, it is clearly manifested by implication from the language used, we can not say that it should not have effect. That which is not expressed in the words may be 'plainly imported' by implication." In the statute under examination there is no language which would exclude the railway property from the roll, but like the trust law, if tested by the strictest letter of the charter, there is a "hiatus," while the context clearly shows an intention to include it.

The question presented in the case of Womack v. Womack, above cited, was, whether a law changing the time of holding district court took effect upon its passage according to the general rule then in force or was suspended until the expiration of the time for holding the court in certain counties of that district. By its plain terms the law would have gone into effect at once, which would make void a judgment of the district court rendered at a term authorized by the old law. Judge Lipscomb used the following language: "In construing this act it is important to inquire what was the main and primary object the Legislature had in view in its enactment. Taking in view the provision in our Constitution requiring the district court to be held twice a year in each county, it seems to be manifest that the intention and main and primary object in view was prospective, and to fix the time when the courts were to be held in each of the counties, commencing in the year succeeding this act; that is to say, the year 1856." The court held that the Legislature did not intend to produce the consequences which would flow from the letter of the law, and the intention prevailed over the language used.

In the case of Russell v. Farquhar, the Supreme Court, speaking through Chief Justice Moore, announced the general doctrine in the following forcible language: "If courts were in all cases to be controlled in their construction of statutes by the mere literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken. But such is not the case. To be thus controlled, as has often been held, would be for the courts in a blind effort to refrain from an interference with legislative authority by their failure to apply well-regulated rules of construction to, in fact,

abrogate their own power and usurp that of the Legislature, and cause the law to be held directly the contrary of that which the Legislature had in fact intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent."

Seeking the intention of the Legislature in the enactment of the law under consideration, we must look to the general scheme whereby the city of Houston was empowered to pave its streets at the cost of the property owners. As a general rule the property to be charged would consist of lots and blocks and tracts of land not divided into lots and blocks fronting upon the streets, but on the streets which were partly occupied by street railways that property would be likewise charged with the cost of the improvement. The scheme was to charge all of this property with the cost of constructing the pavement upon the different streets mentioned; the liability of the abutting property was different from that of the railway, and the liability of each was separately defined; the procedure for ascertaining the liability was alike applicable to both and was provided for in general terms, all of which were applicable to a part of the property; but some were inapplicable to a part of it. One purpose of enacting the law was to provide the means by which the city could ascertain what would be the amount of charges against each individual and piece of property liable for the cost of the work and to issue certificates of indebtedness against such persons and property with which to pay the contractor for the work to be done, thereby avoiding the creation of a municipal debt. The roll of ownership furnished this means for determining that question, and the issues of certificates would enable the city to make advantageous contracts for the work, because the certificates would not be subject to be contested for cause existing before they were issued. The advantage to the citizen or property owner in being placed upon the roll of property was that before the work was commenced he had the right to call upon the city council to examine the roll and correct any wrong to him. The owner whose name was upon the roll was entitled to discharge his indebtedness in five installments, and was guaranteed the right at any time to discharge the whole indebtedness by depositing the money with the assessor and collector of the city. Under the construction placed upon the law by the Court of Civil Appeals, the street railway company would be denied these privileges and would be required to pay cash for the work done at the time of its completion. On the other hand, by this construction the street railway company may be in default on the payment of the sum due from it and contest the claim for any length of time, paying only 6 per cent interest, while the abutting property owner who is in default is by

the statute required to pay from the time of such default 10 per cent interest.

There are many other inconsistencies which would arise by holding that the street railway company is not included in the general procedure provided for the enforcement of such claims. The discriminations and inconsistencies would work such injustice and tend so much to thwart the main purpose of the Legislature in enacting the law as to make it unreasonable to suppose that the Legislature with any intelligent idea of the thing to be accomplished would have enacted such a statute.

We can see no sound reason for so radical a difference in the provisions made for adjusting the rights of private citizens and corporations, and without reason for it we must believe that it was not intended. If the Legislature had intended that the street railway should pay cash and be subject to different rules from those prescribed for other property owners, it could so easily have so enacted that the absence of such provision strongly supports our conclusion that it was the intention to place all property charged with the burden of making improvements upon equality in all respects, and that the street railway company must be held to be included in all of the provisions that apply to the abutting property owners.

The Court of Civil Appeals erred in reversing the judgment of the District Court and in rendering judgment for 6 per cent instead of 8 and in reducing the amount of the demand for which the lien was foreclosed. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Judgment of Court of Civil Appeals reversed.*
*Judgment of District Court affirmed.*