Honorable George Pierce Chairman Committee on Urban Affairs Texas House of Representatives P. O. Box 2910 Austin, Texas 78768-2910
Re: Authority of a municipality to advance compensation to an employee (RQ-1924)
Dear Representative Pierce:
You ask:
May a municipality advance compensation in the form of cash or other property to employees to be fully earned within one year on terms agreeable to the municipality?
Given such a general question, we are, of course, limited to a general answer. However, while we cannot fully and finally answer your question, we can say with a fair degree of certainty that a court would disapprove of such an expenditure of public funds.
Cities generally have control over their finances. See Local Gov't Code §§ 101.002 (type A cities), 101.022 (home rule cities). Cities also have control over the compensation and conditions of employment of their employees. See Byrd v. City of Dallas, 6 S.W.2d 738 (Tex. 1928). However, a city's expenditure of public funds is subject to constitutional restrictions.
The Texas Constitution is replete with provisions that prohibit the grant of public funds and the lending of public credit to private individuals or organizations. Specifically, article III, section 52(a) reads:
 Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. However, this section does not prohibit the use of public funds or credit for the payment of premiums on nonassessable life, health, or accident insurance policies and annuity contracts issued by a mutual insurance company authorized to do business in this State.
Tex. Const. art. III, § 52(a); see also id. §§ 50 (prohibition on the lending of the credit of the state), 51 (prohibition on the grant of public moneys to individuals and corporations); id. art. VIII, § 3 (levy of taxes for public purposes only); id. art. XI, § 3 (prohibition on political subdivisions' subscribing to private capital, and appropriation or loaning of credit to same); id. art. XVI, § 6 (prohibition on appropriation for private purposes). But see Tex. Const. art. III, §§ 52-a (allowing grants of public money for economic development), 52(e) (allowing political subdivisions to invest funds as authorized by law).
One constitutional scholar has analyzed the meaning of the term "lend its credit" found in section 52(a) and the variations of the term found in other constitutional provisions as follows:
 Section 50 states that the legislature may not `give' the credit of the state to anybody, `lend' the credit of the state to anybody, or `pledge' the credit of the state for anybody. . . . This is an involved and somewhat imprecise way of saying that the state may not aid anybody by lending him money.
1 G. Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 225 (1977) (emphasis added); see also Brazoria County v. Perry, 537 S.W.2d 89 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ); Attorney General Opinion JM-533
(1986). An advance of salary is clearly a loan and, thus, a lending of credit within the constitutional prohibition.
While the language found in section 52(a) only denies the legislature the power to authorize a political subdivision to "lend its credit," cases decided thereunder and other constitutional analyses make it clear that the constitutional prohibition also applies indirectly to political subdivisions. See, e.g., Storrie v. Houston City St. Ry. Co., 46 S.W. 796 (Tex. 1898); Braden, supra; Willatt, Constitutional Restrictions on Use of Public Money and Public Credit, 38 Tex. Bar J. 413 (May 1975).
The constitutional provisions cited above signify that the law generally abhors the expenditure of public funds for private purposes. In Brazoria County v. Perry, supra, the court addressed article III, section 52, and succinctly restated the rule as follows:
 The clear purpose of this constitutional provision is to prevent the gratuitous application of funds to private use. [Citations omitted.] The Constitution does not, however, invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose.
537 S.W.2d at 90-91; see also Barrington v. Cokinos,338 S.W.2d 133, 140 (Tex. 1960); Dodson v. Marshall, 118 S.W.2d 621
(Tex.Civ.App.-Waco 1938, writ dism'd); Attorney General OpinionsJM-1146 (1990); JM-551, JM-431 (1986); MW-89 (1979); WW-790 (1960).
The requirement stated in the Brazoria County case that the expenditure must be made "for the direct accomplishment of a legitimate public purpose" leads us to doubt that a court would approve the salary advance about which you ask. Your unadorned question offers no implicit public purpose; however, the determination of a public purpose and the establishment of a quid pro quo are legislative functions. See, e.g., Young v. City of Houston, 756 S.W.2d 813, 814 (Tex.App.-Houston [1st Dist.] 1988, writ denied); Dodson, supra; Attorney General Opinions JM-1146
(1990); MW-373 (1981).
 SUMMARY
A city may not ordinarily advance salary to its employees.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Renea Hicks Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Karen C. Gladney Assistant Attorney General