HOLT v. STATE. (No. 6740.)

(Court of Civil Appeals of Texas. Galveston.
April 9, 1915. Rehearing Denied
April 29, 1915.)

1. DRAINS ⬤═══90—DRAINAGE DISTRICTS—COL-
LECTION OF DELINQUENT TAXES.

Under Rev. St. 1911, art. 2603, authorizing
the commissioners' court to levy, assess, and
collect drainage district taxes, subject to the
law governing the assessment and collection of
taxes for state and county purposes, and article
7688, providing that suits to collect state and
county taxes shall be brought in the name of
the state, the commissioners' court may direct
the bringing of suits for delinquent drainage
taxes, and the suits must be brought in the
name of the state.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 91–101, 103; Dec. Dig. ⬤═══90.]

2. DRAINS ⬤═══18 — ESTABLISHMENT OF DIS-
TRICTS—BONDS—TAXATION.

Const. art. 3, § 52, conferring on drainage
districts the power, by a two-thirds vote of the
property taxpayers, to issue bonds for drainage
purposes, and to levy and collect taxes to pay
interest and sinking fund, as the Legislature
may authorize, vests in the voters of a district
the power to determine whether bonds shall be
issued and a tax levied and collected, and when
the power has been exercised, the actual issu-
ance of the bond and the levy, assessment, and
collection of taxes may be done in a manner
authorized by the Legislature.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 11, 13; Dec. Dig. ⬤═══18.]

3. COUNTIES ⬤═══113—POWER OF COMMISSION-
ERS' COURT — EMPLOYMENT OF COUNSEL —
DRAINAGE DISTRICTS—DELINQUENT TAXES.

Under Rev. St. 1911, art. 7707, empowering
the commissioners' court to contract with one
person to enforce collection of any delinquent
state and county taxes, and where any district
or county attorney refuses to bring suits there-
for, the commissioners' court may employ some
other attorney to sue in the name of the state,
an action in the name of the state for delinquent
taxes, brought by a firm of attorneys employed
by the commissioners' court to bring suits to
collect taxes, will not be abated, in the absence
of anything to show why the county or district
attorney therein failed to prosecute the suit.

[Ed. Note.—For other cases, see Counties,
Cent. Dig. §§ 174–180; Dec. Dig. ⬤═══113.]

4. DRAINS ⬤═══90 — DRAINAGE DELINQUENT
TAXES—ACTIONS—PETITION—SUFFICIENCY.

A petition, in an action for delinquent
drainage taxes, which describes the lands as sev-
eral tracts owned by and in possession of de-
fendant, in the district, and as being the several
parcels described in exhibits attached to the peti-
tion and made a part thereof, the same being
described in duly recorded deeds to defendant,
made a part of the petition for identification,
and the exhibits, consisting of copies of the as-
sessor's tax rolls, showing assessments of de-
fendant's land in the district, giving the name
of the owner, abstract number, and number of
certificate, number of the survey, name of orig-
inal grantee, number of acres assessed, and
value thereof, sufficiently describes the land; for
it can be identified by extrinsic evidence.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 91–101, 103; Dec. Dig. ⬤═══90.]

5. DRAINS ⬤═══13 — "DRAINAGE" DISTRICTS —
ESTABLISHMENT—STATUTORY AUTHORITY.

A statute, for the creation of drainage dis-
tricts, authorized the creation of a district to
straighten and develop streams, dig necessary
ditches to drain the territory, and construct a
levee· to prevent the stream from overflowing;
for "drainage" in its larger sense includes, not
only means to provide outlets and channels to
relieve land from water which accumulates
thereon, but ditches, drains, and embankments
to prevent accumulation of water.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. § 4; Dec. Dig. ⬤═══13.

For other definitions, see Words and Phrases,
Drainage.]

6. DRAINS ⬤═══14—DRAINAGE DISTRICTS—ES-
TABLISHMENT — VALIDITY — COLLATERAL
ATTACK.

Under Acts 32d Leg. c. 118, § 24a (Vernon's
Sayles' Ann. Civ. St. 1914, art. 2597a), provid-
ing that no suit contesting the validity of a
drainage district shall be brought, except in
the name of the state by the Attorney General,
the right of a drainage district, created under
a statute and exercising functions as a district,
to exist and exercise such functions cannot be
raised in an action for the collection of delin-
quent drainage district taxes.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 5, 6; Dec. Dig. ⬤═══14.]

7. DRAINS ⬤═══15—DRAINAGE DISTRICTS—CON-
STITUTIONAL PROVISIONS.

Const. art. 3, § 52, authorizing the Legisla-
ture to provide for the creation of drainage dis-
tricts out of any county, or political subdivision
thereof, or any number of adjoining counties,
or any political subdivision of the state, or any
defined district to be described and defined, au-
thorizes creation of a drainage district out of
any defined territory, and does not require that
a district shall form any political subdivision of
the county or state, or any defined territory ex-
isting prior to the creation of the district.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 7–10; Dec. Dig. ⬤═══15.]

8. DRAINS ⬤═══2—DRAINAGE DISTRICTS—TAX-
ATION—STATUTORY PROVISIONS.

Const. art. 3, § 52, authorizing the creation
of drainage districts with power, by a two-
thirds vote, to issue bonds and levy necessary
taxes, does not invalidate a statute conferring
on the commissioners' court the power to issue
bonds and levy taxes legally voted.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. § 17; Dec. Dig. ⬤═══2.]

On Motion for Rehearing.

9. DRAINS ⬤═══90—DRAINAGE DISTRICTS—COL-
LECTION.

Under Vernon's Sales' Ann. Civ. St. 1914,
arts. 7624, 7632, 7687, 7692, providing that de-
linquent tax lists shall be made up by the tax
collector on March 21st, after the taxes become
due, and that the tax lists, when approved by
the commissioners' court, shall be published for
three consecutive weeks, and after such adver-
tisement, suits shall be instituted, a suit for
delinquent drainage district taxes cannot be
brought before April 21st of the year succeed-
ing the year for which they were assessed.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 91–101, 103; Dec. Dig. ⬤═══90.]

10. LIMITATION OF ACTIONS ⬤═══11—DRAINAGE
DISTRICTS—COLLECTION OF TAXES—"STATE
OR ANY COUNTY, CITY, OR TOWN."

Under Rev. St. 1895, art. 5212b, providing
that no delinquent taxpayer may plead any
statute of limitation against payment of any
taxes due to the "state or any county, city or
town," a defendant, sued for delinquent drain-
age district taxes, may not invoke limitations as
a defense.

[Ed. Note.—For other cases, see Limitation of
Actions, Cent. Dig. §§ 35–39; Dec. Dig. ⬤═══11.]

⬤═══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. STATUTES ⬡⟶181—CONSTRUCTION—LEGISLATIVE INTENT.**

The court, in construing a statute, must seek to give effect to the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 263; Dec. Dig. ⬡⟶181.]

**12. DRAINS ⬡⟶67 — DRAINAGE DISTRICTS — TAXATION—CONSTITUTIONAL LIMITATIONS.**

Const. art. 3, § 52, prohibiting the Legislature from authorizing any county, city, town, or other subdivision from lending its credit to any individual or corporation, provided that under legislative provision any county, political subdivision, or any defined district may, on a two-thirds majority of the taxpayers voting thereon, issue bonds in any amount not to exceed one-fourth of the assessed valuation of the realty in the district, does not prohibit the levy and collection of taxes on property in any city or town to pay interest on a sinking fund for bonds issued by a drainage district of which the city or town is a part, on the ground that the city or town has previously issued bonds in the full amount permitted by other provisions of the Constitution, for drainage district bonds do not add to the bonded indebtedness of the city or town, and the limitation limits only the amount of bonds which can be issued for drainage purposes.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 73, 76, 91; Dec. Dig. ⬡⟶67.]

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Action in the name of the State of Texas, for the use of Matagorda County Drainage District No. 1, against John F. Holt. From a judgment for plaintiff, defendant appeals. Affirmed, and motion for rehearing overruled.

D. R. Pearson, of Richmond, and Krause & Wilson, of Bay City, for appellant. J. W. Conger, of Bay City, for appellee.

PLEASANTS, C. J. This suit was brought in the name of the state of Texas, for the use and benefit of Matagorda County Drainage District No. 1, against appellant to recover taxes, together with penalties, interest, and costs, alleged to be due by appellant upon lands in said drainage district owned by him and against which the taxes sought to be recovered were levied and assessed for the years 1910 and 1911, and to foreclose the tax lien upon said lands. The petition was signed by the law firm of Linn, Conger & Austin as "attorneys for plaintiff." The defendant answered by plea in abatement, by which it is averred that the state of Texas is not authorized to institute and maintain this suit, but such suit could only be brought and maintained by Matagorda County Drainage District No. 1, by and through the drainage commissioners of said district; and, if such suit could be maintained by the state, the firm of Linn, Conger & Austin are not officers of the state of Texas authorized by law to institute suits in the name of the state to recover delinquent taxes. The defendant further answered by general demurrer and special exceptions and pleas, which it is unnecessary to set out, but the nature of which will be indicated by the questions hereinaft-

er discussed. The trial in the court below without a jury resulted in a judgment in favor of the state of Texas, for the use and benefit of Matagorda County Drainage District No. 1 for the sums claimed in the petition, and for foreclosure of a tax lien upon the lands described in the petition.

[1] The first assignment of error is as follows:

"The court erred in overruling defendant's plea in abatement and in not dismissing this cause, because it appears this is a suit in the name of the state of Texas, for the use and benefit of Matagorda County Drainage District No. 1, to recover taxes, alleged to have been assessed and levied on property in said drainage district for the purpose of paying interest on certain bonds alleged to have been issued by said drainage district for certain purposes and to create a sinking fund to pay off said bonds at maturity, because if said taxes are collectible, the commissioners of said drainage district or said drainage district are the parties authorized by law to enforce collection thereof."

Article 2603 of the Revised Statutes of 1911, which is one of the articles in title 47, chapter 4, of the statutes relating to drainage and the creation of drainage districts with authority to issue bonds for the purpose of obtaining funds for securing necessary drainage for districts created under the authority of said statute, contains the following:

"Whenever any such district drainage bonds shall have been voted, the commissioners' court shall levy and cause to be assessed and collected taxes upon all property within said drainage district, whether real, personal, mixed or otherwise, and sufficient in amount annually to pay the interest on such bonds, as it shall fall due, together with an additional amount to be annually placed in a sinking fund sufficient to discharge and redeem said bonds at their maturity. If advisable, the sinking fund shall, from time to time, be invested in such county, municipal, district or other bonds as shall be approved by the attorney general of the state for the benefit of such drainage district. Provided that, in the assessment and collection of the taxes authorized by this chapter, and in all matters pertaining thereto or connected therewith, said assessor and collector shall have the same powers and shall be governed by the same rules, regulations and proceedings as are provided by the laws of this state for the assessment and collection of taxes for state and county purposes, unless otherwise provided for in this chapter. The taxes levied or authorized to be levied by this chapter shall be a lien upon the property for which said taxes are assessed; and it shall be the duty of * * * commissioners' court, and the said court shall have authority, to fix and determine when said taxes shall mature; and, upon the failure to pay said taxes when due, the penalty provided by the laws of Texas for the failure to pay state and county taxes at maturity shall in every respect apply to taxes herein authorized to be assessed and levied."

This provision of the statute expressly confers upon the commissioners' court the authority to levy and collect the taxes necessary to meet the obligations incurred in the issuance of bonds by a drainage district, and also provides, in substance, that in all matters pertaining to the assessment and collection of taxes the laws of the state in regard to the assessment and collection of

state and county taxes shall apply. Article 7688 of the statutes provides that suits for the collection of state and county taxes shall be brought in the name of the state. We think, when construed together, these articles not only authorize, but require, that the commissioners direct the bringing of suits for the collection of delinquent taxes, levied and assessed by such court upon the property of a drainage district organized under the statute before cited, and that such suit must be brought in the name of. the state.

[2] The article of the statute above quoted, which gives the commissioners' court the power to levy, assess, and collect taxes in a drainage district which has voted to issue drainage bonds, is not in conflict with section 52, art. 3, of the Constitution, which confers upon drainage districts the power, by a two-thirds vote of the property taxpayers voting at an election held for that purpose, to issue bonds for drainage purposes and to levy and collect the taxes necessary to pay the interest and provide a sinking fund for the redemption of the bonds at their maturity. This provision of the Constitution expressly provides that the power therein conferred upon the voters of a drainage district shall be exercised in such manner as the Legislature may authorize. The power to determine whether the bonds should be issued and the tax levied and collected is vested absolutely in the voters of the district, but when this power has been exercised, the actual issuance of the bonds, and the levy, assessment, and collection of the taxes shall be done in such manner as the Legislature may authorize, and this provision of the Constitution cannot be construed as prohibiting the Legislature from placing upon · the commissioners' court the duty to issue the bonds and levy, assess, and collect the taxes authorized by the voters of the district.

[3] The second assignment, which complains of the refusal of the court to sustain the plea in abatement, on the ground that the suit was not brought by the Attorney General or the district or county attorney, and that the authority of the firm of Linn, Conger & Austin to represent the state in the bringing of the suit was not alleged in the petition, is without merit. The evidence shows that the commissioners' court of Matagorda county, by an order duly passed and entered upon the minutes of said court, authorized the law firm of Linn, Conger & Austin, as special attorneys, to collect these taxes and to prosecute suits to enforce such collection. Article 7707 of the statute authorizes the commissioners' court, whenever deemed expedient by the court, to enter into a contract with any person to enforce collection of any delinquent state and county taxes. This article further provides that it shall be the duty of the county attorney, or of the district attorney where there is no county attorney—

"to actively assist the person with whom the contract is made, by filing and pushing to a speedy conclusion all necessary suits for the collection of delinquent taxes under any contract; provided, that where any district or county attorney shall fail or refuse in good faith to prosecute such suits, he shall not be entitled to any fees from such suits; provided, that where any district or county attorney fails or refuses to bring these suits when requested to do so by the commissioners' court, or by the person having a contract herein provided for, then the contractor shall be authorized to employ some other attorney to file these suits in the name of the state, in the same manner provided by law to enforce the collection of delinquent taxes."

The record in this case is silent as to why the county or district attorney failed to prosecute this suit; but, as the duty to have the taxes collected is imposed by the statute upon the commissioners' court, and that court is expressly authorized to contract with any person ·to enforce the collection of such taxes, and in the exercise of this authority it has contracted with the firm of Linn, Conger & Austin to enforce such collection by prosecuting this suit, such suit cannot be abated because the county or district attorney, for some reason not shown by the record, did not file the suit as attorney for the plaintiff. Neither the county nor the district attorney appear to have asserted any right to bring the suit, and we do not think the question of the right of Linn, Conger & Austin to bring the suit can be raised by any other person.

The third and fourth assignments complain of the ruling of the trial court in refusing to sustain exceptions to the petition upon the grounds presented in the plea of abatement before discussed, and are disposed of. by our holdings under the first and second assignments.

[4] The fifth assignment complains of the ruling of the court in not sustaining appellant's exception to the petition on the ground that it does not sufficiently describe the land upon which the lien was sought to be foreclosed, and the sixth assignment complains of the judgment entered in the court below on the ground that the land upon which the tax lien is therein foreclosed is not sufficiently described. The petition describes the land as several tracts owned by and in the possession of defendant in Matagorda County Drainage District No. 1, in Matagorda county, and being—

"all the several tracts, parcels and portions of land described in Exhibits A and B, attached hereto, and made a part hereof, and same being fully described in deeds and conveyances to said John F. Holt, duly recorded in the deed records of Matagorda county, Tex., and which are referred to¡ and made a part hereof for identification and certainty, and defendant is hereby notified to produce each and every of the said original deeds and conveyances on the trial hereof, or secondary evidence of their contents will be used on the trial by plaintiff."

The exhibits referred to, and which were attached to the petition, were copies of the assessor's tax rolls showing the assessments

made of defendant's land in said drainage district for the years 1910 and 1911. These rolls were prepared in accordance with article 7563 of the Revised Statutes, and give the name of the owner, the abstract number and number of the certificate, the number of the survey, name of the original grantee, the number of acres assessed, and the value thereof. The exception to the petition is as follows:

"That the lands described in said plaintiff's petition upon which foreclosure is sought are described in a vague and uncertain manner and no such description is averred that identifies the land with that degree of certainty required by law."

This is nothing more than a general demurrer to that portion of the petition describing the lands upon which the lien was sought to be foreclosed, and the exception was properly overruled. It is clear that a deed containing a description of this kind could not be held void for insufficiency of description, and the same rule applies in determining the sufficiency of description in an assessment of property and in a petition seeking to foreclose the tax lien. This rule, as stated by our Supreme Court in the case of Eustis v. City of Henrietta, 90 Tex. 471, 39 S. W. 567, is:

"That such description is sufficient when it furnishes the means by which the property can be identified from the description itself or by the use of extrinsic evidence to apply that description to the property."

Tested by this rule, we think there is no question of the sufficiency of the description of the property before set out. The description of the land in the judgment follows that in the petition and, under the rule above stated, is sufficient.

The remaining assignments of error, which we will not set out nor discuss in detail, present the questions hereinafter discussed.

[5] First. It is contended under appropriate assignments that the creation of the district and the issuance of the bonds and the levy and assessment of the taxes sought to be collected by this suit were illegal and unauthorized, because the petition for the creation of said district and the estimates of the engineer, upon which the election to determine whether said district should be created, the bonds issued, and the tax levied was ordered, show that the purpose sought in the creation of the district and the issuance of the bonds was the protection of said district from overflow by the erection of levees, and not to secure drainage therefor, and the creation of a levee district and the issuance of bonds for the purpose of erecting levees to prevent overflows was not authorized by law at the time this district was created and the bonds voted and issued. We do not think this contention is sound. The petition for the creation of said drainage district contains the following:

"Said district lies partly on the eastern bank of the Colorado river, and that by reason of the impediments to the flow of the water through the channel of the Colorado river, said territory was constantly menaced by overflow, and, unless some adequate means of protection be provided, the whole or greater part of said territory would be practically useless for agricultural purposes; that by the creation and maintenance of a levee along the western boundary of such district, the greater part of such territory would be rendered susceptible to cultivation, and unless such drainage and protection from overflow be provided, that the value of such property for agricultural purposes would be practically destroyed; that the territory embraced is situated between the Colorado river and Caney creek, with a fall of about 18 inches to 2 feet to the mile, with watersheds adjacent to said streams, the majority of which empty into Matagorda Bay, and that by straightening and developing such streams, and digging the necessary ditches said territory could be easily drained, and by the erecting of an embankment along the western boundary of said proposed district and on east side of the Colorado river such territory could be free and completely protected from overflow."

The estimate of the engineer shows that much the larger portion of the proposed improvement was the cost of erecting the necessary levees to prevent the overflow of the district by the flood waters of the Colorado river. We are not inclined to hold that the creation of the district for the purpose stated was unauthorized. At the time this district was created we had no statute providing for the creation of levee districts as such, and, as before stated, this district was created under the statute above referred to, providing for the creation of drainage districts. Drainage in its larger sense includes, not only providing outlets and channels for relieving land from water which accumulates thereon, but also such ditches, drains, and embankments as may be necessary to prevent the accumulation of the water, and any system of drainage will involve, to some extent at least, the creation of embankments or levees. We do not think the fact that the larger portion of the costs of the proposed undertaking was the construction of embankments or levees prevented or rendered void the creation of the drainage district under the statute authorizing the creation of such districts.

[6] But be this as it may, the district was created under the provision of the statute, and is an existing quasi municipal corporation, exercising all its functions as such, and its right to exercise such functions cannot be collaterally attacked, but only in an action brought for that purpose by the state or under its authority. Parker v. Harris County Drainage District, 148 S. W. 352; Wharton County Drainage District v. Higbee, 149 S. W. 382.

It is expressly provided by the statute (Acts of 1911, p. 245, § 24a [Vernon's Sayles' Ann. Civ. St. 1914, art. 2597a]) that no suit contesting the validity of a district of this kind, or of the bonds of such district, shall be permitted to be brought in any court of this state except in the name of the state by

the Attorney General upon his own motion, or upon the motion of some other party upon good cause shown.

[7] It is further contended that the creation of the district was illegal, and that its attempted creation and the bonds issued for said district are void, because the lines of the district do not confine its territory to any existing political subdivision of the county of Matagorda or of the state of Texas.

Section 52 of article 3 of the Constitution, which authorizes the Legislature to provide for the creation of drainage districts, describes the districts authorized to be created as follows:

"Any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include towns, villages or municipal corporations."

This provision of the Constitution expressly and unequivocally authorizes the creation of such district out of any defined territory, and does not require that such districts conform to any political subdivision of the county or state, or any defined territory existing prior to the creation of the district.

[8] It is further contended that the bonds and the tax levy therefor are illegal and void because the Constitution gave to the district when created the power to issue the bonds and levy the tax, and the Legislature was without authority to delegate such powers to the commissioners' court. While the provision of the Constitution before cited confers upon the drainage district the power by a two-thirds vote of its resident property taxpayers to issue bonds for the purposes stated, and to levy the necessary tax, it directs that the district shall be created and the bonds issued under legislative supervision. The provisions of the statute requiring that bonds, when authorized by a vote of the district, shall be issued by the commissioners' court is not obnoxious to the provisions of the Constitution above mentioned. The commissioners' court is only made the agent of the voters of the district for performing the ministerial work of issuing bonds and assessing and collecting the tax authorized to be levied by the voters of the district. The Constitution means nothing more than that the issuance of the bonds and the levy of the tax therefor shall be authorized by a two-thirds vote of the resident property taxpayers of the district. When this authorization has been had the actual issuance of the bonds, and the manner and means of collecting the tax therefor, are mere matters of administrative detail which the Legislature was authorized to direct. We do not think there is any merit in the contention that the bonds are void because the district for which they were issued includes Bay City, an incorporated town of less than 10,000 inhabitants, and said city has levied taxes for other purposes up to the limit fixed by the Constitution. If the pro

vision of the Constitution before referred to should be construed as preventing the levy of taxes for drainage bonds upon property in the city which was already taxed for city purposes the full amount authorized by the Constitution, a property owner in the city might defeat the collection of the drainage bond tax levied upon his property therein, but this would not affect the validity of the drainage district and the bonds issued therefor.

This disposes of all the material questions presented by appellant's brief. If there is any merit in any of the assignments, the questions, presented are not such as can be raised in this suit. We have considered each of the assignments presented, and none of them should, in our opinion, be sustained. It follows that, the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

[9] In our main opinion, filed in this cause on April 9, 1915, appellant's twelfth assignment of error was overruled without discussion. On motion for rehearing counsel for appellant very earnestly insist that this assignment, which assails the judgment of the trial court in favor of plaintiff for the taxes assessed against appellant for the year 1910, on the ground that plaintiff's suit for said taxes was barred by the statute of limitation of two years, should be sustained. Plaintiff's petition was filed on April 17, 1913. The taxes assessed against appellant for the year 1910 were due or payable on January 1, 1911, and the collection of said taxes might have been enforced by the tax collector under the provisions of articles 7624 and 7632, Vernon's Sayles' Civil Statutes, at any time after said date, but no suit for the collection of delinquent taxes upon real estate is authorized until after the delinquent list has been made out and approved by the commissioners' court, as provided in article 7692 of the statutes above mentioned, and the lands upon which the taxes are due advertised, as provided in article 7687 of the said statutes. These articles of the statutes provide that the delinquent lists shall be made up by the tax collector on March 31st, after the taxes become due, and that after such lists have been corrected and approved by the commissioners' court they shall be published for three consecutive weeks in some newspaper published in the county, "and after such advertisement suits shall be instituted," etc. It is manifest, under the provisions of these articles, that no suit for delinquent taxes due upon real estate can be brought earlier than the 21st day of April of the year succeeding the year for which the taxes were assessed. Plaintiff, therefore, could not have instituted this suit before April 21, 1911, which was less than two years before the date upon which the suit was filed, and if the statute

of limitation applies to suits brought by or in the name of the state to recover taxes due a drainage district, the record shows that this suit was brought within two years after the cause of action and right to sue accrued, and therefore was not barred by the statute of limitation.

[10] We are further of the opinion that the statute of limitation cannot be invoked as a defense to a suit of this kind. Article 5212b of the Revised Statutes of 1895 provides that:

"No delinquent taxpayer shall have the right to plead in any court or in any manner rely upon any statute of limitation by way of defense against the payment of any taxes due from him or her either to the state or any county, city or state."

While the taxes involved in this suit were levied only upon property of the drainage district and for the benefit of said district, they were levied by the commissioners' court, and it is made the duty of that court to collect said taxes by suit brought therefor in the name of the state. We think it would do violence to the evident purpose and intent of the Legislature in the passage of this act to construe its language so literally as to restrict its application to taxes levied for state, county, city, or town purposes. The intention of the Legislature in the passage of this statute was manifestly to deny to all delinquent taxpayers the benefit of the general statutes of limitation, and it would defeat that purpose to exclude from the operation of the act taxes due a drainage district by placing a literal construction upon the words "taxes due either to the state or any county, city or town." Such words should, we think, be construed to include any and all taxes levied and assessed under the Constitution and laws of this state, whether they are levied and assessed for state, county, city, or town purposes, or for the benefit of a drainage district or other quasi municipal corporation.

[11] Mr. Sutherland, in his work on Statutory Construction, § 218, says:

"It is indispensable to a correct understanding of a statute to inquire, first, what is the subject of it—what object is intended to be accomplished by it? When the subject-matter is once clearly ascertained, and its general intent, a key is found to all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace and effectuate that intent. When the intention can be collected from the statute, words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intention."

In the case of Russell v. Farquhar, 55 Tex. 355, the Supreme Court, speaking through Chief Justice Moore, announced the general doctrine in the following forcible language:

"If courts were in all cases to be controlled in their construction of statutes by the mere literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken. But such is not the case. To be thus controlled, as has often been held, would be for the courts, in a blind effort to refrain from an interference with legislative authority by their failure to apply well-established rules of construction, to, in fact, abrogate their own power and usurp that of the Legislature, and cause the law to be held directly the contrary of that which the Legislature had in fact intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent."

Our courts have uniformly approved and followed this rule of statutory construction. Forshey v. Railway Co., 16 Tex. 528; Womack v. Womack, 17 Tex. 1; Runnells v. Belden, 51 Tex. 48; Ins. Co. v. State, 86 Tex. 268, 24 S. W. 397, 22 L. R. A. 483; Storrie v. Street Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716; City of Houston v. Dooley, 40 Tex. Civ. App. 371, 89 S. W. 777; Railway Co. v. Hornberger, 141 S. W. 311.

[12] In disposing of the questions presented by the thirteenth assignment of error, we say in our main opinion:

"We do not think there is any merit in the contention that the bonds are void because the district for which they were issued includes Bay City, an incorporated town of less than 10,000 inhabitants, and said city has levied taxes for other purposes up to the limit fixed by the Constitution. If the provision of the Constitution before referred to should be construed as preventing the levy of taxes for drainage bonds upon property in the city which was already taxed for city purposes the full amount authorized by the Constitution, a property owner in the city might defeat the collection of the drainage bond tax levied upon his property therein, but this would not affect the validity of the drainage district and the bonds issued therefor."

Appellant in his motion for rehearing has directed our attention to evidence in the record which shows that a portion of his land upon which the taxes sued for were assessed is situated in the corporate limits of the city of Bay City, and under the assignment the question of the validity of the tax upon this land is properly raised. Section 52, art. 3, of the Constitution of this state is in the following language:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the state, to lend its credit or to grant public money or thing of value in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company; provided, however, that under legislative provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined. within the state of Texas, and which may or may not include towns, villages or municipal corporations, upon a vote of two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and col-

lect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit."

One of the purposes for which the debt authorized to be incurred under this provision of the Constitution is "drainage, or in aid thereof." Under the rule of construction which we have above stated, we do not think this constitutional provision can be construed as prohibiting the levy and collection of taxes upon property in a city or town to pay the interest and sinking fund requirements of bonds issued by a drainage district of which the city or town forms a part, on the ground that such city or town has theretofore issued bonds in the full amount permitted by other provisions of the Constitution. These bonds do not add to the bonded indebtedness of the town. The provision of the Constitution above quoted expressly provides that the debt created by the issuance of drainage bonds shall be "in addition to all other debts," except that a city or town shall not increase its bonded indebtedness for drainage purposes beyond the limit authorized by other provisions of the Constitution. Under this section of the Constitution a city or town would be authorized to issue bonds for drainage purposes or in aid thereof, and we think the exception stated in said provision was only intended to limit the amount of bonds which can be issued by a city or town for such purpose, and the fact that a city or town has issued bonds to the full amount allowed by the Constitution does not relieve the property in said city or town from taxes levied to provide for bonds issued by a drainage district of which such city or town is a part. We think the assignment was properly overruled.

We have carefully considered appellant's able motion for rehearing, and have concluded to adhere to our former opinion. It follows that the motion should be overruled; and it has been so ordered.

Overruled.