## KUHLMANN et al. v. DRAINAGE DIST. No. 12 OF HARRIS COUNTY et al.

### No. 9648.

Court of Civil Appeals of Texas. Galveston.

May 28, 1932.

Rehearing Denied June 23, 1932.

Ward & Ward, of Houston, for appellants.

Fouts, Amerman, Patterson & Moore, of Houston, for appellees Drainage Dist. No. 12 and another.

Sam Neathery, City Atty., and William D. Orem, Asst. City Atty., both of Houston, for appellee City of Houston.

PLEASANTS, C. J.

This suit was brought by appellant Kuhlmann and thirty-three other owners of property situated in the appellee drainage district to prevent the collection of taxes on their property by both appellees, Harris county drainage district No. 12 and the city of Houston.

The petition alleges in substance that after the organization of the drainage district the city, without the consent of the owners of the property affected thereby, extended its boundaries so as to include a portion of the drainage district; that the city has taken over and is utilizing the ditches within the city limits which were constructed by the drainage district; and that in so taking over a part of the territory of the drainage district the city owed plaintiffs the duty to assume and pay its proportion of the bonded debt of the district, and to maintain equality and uniformity of taxation within the territory so taken over by the city. It then alleged that plaintiffs' property so included by the city in its extended limits has paid city taxes on the same basis as other city property and has been made liable by its inclusion in the city, for city bonded indebtedness, and has since its inclusion had the added burden of the drainage district tax, which other property in the city of Houston was not burdened with.

Plaintiffs asked for an injunction against the drainage district restraining it from levying, assessing, or from claiming any right to levy a tax or assess for taxation the lands of plaintiffs situated within that portion of the district included by the city in its extension of the city limits, and further pray:

"That any and all claims of the right to tax or have taxed on behalf of said Drainage District, and any and all claims by reason of any purported assessment of plaintiffs' property within said territory, and any and all tax levies made for or on behalf of said drainage. district covering the real property of plaintiffs within said territory, and any and all liens made or asserted by or on behalf of said Drainage District for alleged taxes on plaintiffs' lands within said territory be cancelled and annulled and removed as a cloud from and upon plaintiffs' title to their aforesaid lands within said territory.

"That the City of Houston be required to take over and assume the bonded indebtedness of said territory of said Drainage District situated within the boundaries of the City of Houston as hereinabove alleged, or to assume such taxes on behalf of these plaintiffs to said Drainage District as may or might be assessed, levied and otherwise collected from plaintiffs by said Drainage District.

"To enjoin and restrain the. City of Houston from assessing and levying taxes against the real property of these plaintiffs without crediting and taking into account by reduction pro tanto the amount of taxes annually assessed and levied by and on behalf of said Drainage District against the property of plaintiffs situated within said Drainage District.

"That the City of Houston be required to have the amount of taxes assessed and levied by or on behalf of said Drainage District applied upon and credited against the amount assessed and levied by the City of Houston so that plaintiffs' property may be placed on an equal basis with other property situated within the boundaries of said city.

"That the City of Houston be required to assume and protect plaintiffs' said land from tax claims, indebtedness and liens on behalf of said Drainage District.

"That writ of mandamus issue to the Mayor and City Commissioners of the City of Houston requiring and compelling them to pass such ordinances as may effectuate the taking over of said bonded and interest indebtedness of said Drainage District, as against the property of these plaintiffs situated within said city, as hereinabove alleged, and to relieve the plaintiffs of taxation for Drainage District purposes except as such taxes may be assessed and levied by the City of Houston against said property of plaintiffs within said territory in common with other taxation by the City of Houston of land within its territorial boundaries."

The defendant drainage district answered by a general demurrer and special exceptions or "speaking demurrers," the nature of which, as far as may be necessary to elucidate the questions discussed in this opinion, will be hereinafter stated. This defendant also 'answered by general denial and several special pleas, the nature of which will be hereinafter shown.

The defendant city of Houston answered by a general demurrer and general denial, and specially pleaded authority of the city under its charter and the Constitution and laws of this state to levy, assess, and collect, the taxes complained of by plaintiffs, and specially denied the allegations of the plaintiffs' petition as to the illegality of the extension of the city limits so as to include the property of plaintiffs described in the petition.

The trial in the court below without a jury resulted in a judgment in favor of both defendants.

It would serve no useful purpose to discuss and decide the numerous propositions presented in appellants' brief, and we shall only discuss those which we deem conclusive in a determination of the merits of this appeal.

The only ground upon which plaintiffs' petition bases its cause of action against the drainage district and its officers is that the territory in which plaintiffs' property is situated is not within the drainage district as that district was created and organized in 1922 and 1923. This claim of appellants is based upon the facts that the territory in question was sought to be annexed to the city of Houston by an ordinance of the city passed on November 20, 1922, and that since the field notes of the district given in the published call for the election to create the district held on December 29, 1922, call for the south line of the city, appellants' property is not within the drainage district created by such election.

The undisputed evidence establishes the following facts: The petition for an election to create the drainage district was filed on April 10, 1922. Notice of hearing on the petition was issued on April 12, 1922. The engineer's report on the petition for the election was filed on September 18, 1922. The order of the commissioners' court granting the petition and authorizing notice of the election to be held on December 29, 1922, was made on November 27, 1922. The order of the commissioners' court canvassing the returns and declaring the result of this election was made on January 2, 1923. On November 20, 1922, the city council or board of commissioners passed an ordinance extending the limits of the city southwards so as to include the property of plaintiffs involved in this suit. The field

notes contained in the petition for an election to create the drainage district filed April 10, 1922, call to begin at the southwest corner of the city limits, and after calls thence north, west, south, east, northeast, and north "to the south line limits of the City of Houston; thence west along said City's south limits to southwest corner of same to place of beginning." These field notes are identical in all of the subsequent instruments and orders executed and made in the proceedings incident to the election held on December 29, in which the creation of the district was authorized by a majority of the voters participating therein.

In a charter amendment election held on December 30, 1922, the city of Houston, by a majority of the voters of the city participating in that election, ratified the extension of the city attempted to be made by the ordinance of November 20, 1922.

The city council canvassed the returns of this election and declared the result thereof on January 2, 1923.

On the 12th day of February, 1923, the commissioners' court authorized the issuance of bonds for drainage district No. 12 in the sum of $450,000, which were voted by the district at the election held on December 29, 1922. These bonds were duly issued, approved, and sold, and the proceeds used in providing drainage for the district. The commissioners' court has each year thereafter levied, assessed and collected taxes for the payment of interest and the retirement of these bonds upon all of the property, including all of that embraced in the extended city limits, and no protest against such taxation has been made by plaintiffs or any property owner in the district until the filing of this suit on May 2, 1930.

Neither the commissioners' court or any of the county officers charged with the duty of assessing and collecting the taxes levied by that court, nor the holders of the bonds issued by the district, are parties to this suit.

In answer to all of the assignments and propositions presented by appellants affecting their cause of action against it, the appellee drainage district presents the following counter propositions:

"It being undisputed that the Commissioners Court of Harris County is the court or board charged by law with assessing the property of the Drainage District, as complained of by plaintiffs, and the District not being vested by law with the duty or power to assess taxes, unless authorized by election, which has not been done in this District, the Commissioners Court, or the members thereof, are necessary parties to a suit to enjoin the assessment and collection of taxes and no injunction will lie in a suit to which they are not parties."

"Where for seven years the Commissioners Court on behalf of a drainage district has been levying taxes upon a defined district to pay interest and to guarantee a sinking fund to retire outstanding bond issues, the holders of the bonds are necessary parties to a suit to restrain the collection of taxes against a part of this territory on the ground that such part is not included in the field notes of the District."

Both of these counter propositions are sound, and each of them requires an affirmance of the judgment in favor of the drainage district.

■ As stated in the first proposition, the uncontradicted evidence shows that the drainage district has not acquired by an election held for that purpose the right and power to levy, assess, and collect taxes for the district, and that duty and power remain as vested by our statutes solely in the commissioners' court of Harris county, and the officers of the county charged with the duty of assessing and collecting the county taxes. Articles 8136, 8138, 8140, 8141, 8142, 8143, and 8144, Revised Statutes (1925); Holt v. State (Tex. Civ. App.) 176 S. W. 743.

As we have before stated, neither the commissioners' court or any of its members, nor the tax assessor or tax collector of Harris county, is a party to this suit. It seems clear to us that the court could not have issued an injunction restraining the drainage district from assessing and collecting taxes on the property described in the petition when the undisputed evidence shows, and the plaintiffs' petition alleges, that the taxes sought to be enjoined had never been assessed and collected by the district, and no power to assess and collect these taxes had ever been claimed or attempted to be exercised by the district. Its right in the subject-matter of the suit was only that of a beneficiary of a power conferred by the statute for its benefit upon the commissioners' court of Harris county. Upon this state of the law and the evidence the commissioners' court of Harris county was a necessary party to plaintiffs' suit, and the failure of plaintiffs' petition to make that court a party to the suit, in the absence of its voluntary appearance in the suit, prevented the court from rendering any judgment enjoining the assessment and collection of taxes upon the property of appellants situated in the drainage district.

■ The soundness of appellee's second proposition is, we think, conclusively settled by the opinion in the case of Goldman v. State (Tex. Civ. App.) 263 S. W. 1097, 1099, in which a writ of error was refused by the Supreme Court. In that opinion the court says:

"Appellants also specially plead that the election authorizing the issuance of district bonds was invalid, irregular, and fraudulently conducted. The court sustained exceptions

to the answer presenting that defense, and that ruling is assigned as error. It appears from the record that bonds to the amount of $120,000 had been issued, and that those bonds had been approved by the Attorney General, and were later sold to third parties. The holders of those bonds are not parties to this suit. It has been expressly held in a late case approved by the Supreme Court that the irregularity of such an election cannot be raised in a proceeding of this character. State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107. In that case the court used the following language in disposing of that question:

" 'It appears that the bonds which were issued pursuant to the election held for that purpose were sold after examination and approval by the Attorney General of Texas, and that they are now in the hands of purchasers who are not parties to this litigation. The holders of the bonds, it seems, were impleaded, but were never cited and brought into court. They were not before the court so as to be affected by any judgment. In any event, such holders of the bonds would be necessary parties to a proceeding of this character and no judgment could be ,rendered which did not validly dispose of their rights. Dallas County Levee Imp. Dist. No. 3 v. Ayers (Tex. Civ. App.) 246 S. W. 1112 (writ of error refused).' "

█ We are of opinion that appellee drainage district's fourth proposition is sound and is a complete answer to appellants' claim of right to maintain this suit against it: "Where for seven years territory has been assessed for taxes as being a part of a drainage district and where bonds have been legally issued and sold and valuable drainage improvements have been made in the District and complete control exercised by the District without any protest from the inhabitants of said territory, who (including plaintiffs) have paid taxes thereon for several years, a land owner could not bring a suit to determine whether the field notes of the District included his land but the District as defined existed de facto if not de jure and no one could question its territorial limits except the State."

As we have before shown, it is undisputed that the district was voted in 1922, and early in 1923 issued bonds, sold them, laid out valuable improvements, and completed them with the bond money, and that the plaintiffs in this suit who are affected by the city limits extensions paid their taxes without protest until about 1928.

█ It is the settled rule of decision in this state relating to the validity of the inclusion within the territorial limits of public municipalities organized under the statutes of this state, when, after such organization, the municipality has assumed and continued to exercise its authority over the territory, without any protest by the owners of property in the territory, that the owners of the property cannot thereafter as private citizens maintain a suit attacking the inclusion of the disputed territory in the corporate limits of the municipality, but that such suit must be by quo warranto proceedings in which the state is a party. The reason for this rule of decision is clearly and forcibly expressed in the case of Kuhn et al. v. City of Yoakum (Tex. Com. App.) 6 S.W.(2d) 91.

█ If the suit had been brought by the state, or by its authority, and all those directly interested in its subject-matter had been made parties therein and brought before the court, we do not think upon the evidence adduced upon the trial appellants would have been entitled to a judgment sustaining their contention that the territory in which their property is situated is not within the limits of the drainage district, as those limits were fixed and designated in the proceedings by which the district was organized.

The undisputed evidence before set out shows that the field notes set out in the petition for election to organize the drainage district filed on April 10, 1922, tie the district to the south line of the territorial limits of the city of Houston and that as that line was then fixed and established all of the territory involved in this case was included in the district sought to be organized. These identical field notes of the territory embraced in the district were contained in all the subsequent proceedings in the organization of the district, including the engineer's report in the petition, the order of the commissioners' court, and the notice of the election thereafter held to determine whether or not the district as so described should be created.

The election was held on December 29, 1922. The only ground upon which appellants base their claim that their property is not included in the limits of the district, as that district was created by the election held on December 29, 1922, is that prior to the date of the election the city of Houston, on November 20, 1922, passed an ordinance extending the limits of the city so as to take in appellants' property, and that by force of this ordinance the field notes in the petition for the creation of the drainage district, and in all of the subsequent proceedings had in its organization, must be regarded as calling for the south line of the city as fixed by the ordinance, and not as that line was fixed and established at the time the petition for the creation of the district and the order and notice of the election for that purpose were made and issued.

We do not think this contention can be sustained. The field notes of the proposed district as contained in all of the proceedings incident to its creation were definite and the extent and location of the district easily determined therefrom, and no voter at the election

by which it was created could have any difficulty in ascertaining its extent and location. The attempt by the city prior to the election, to extend the city limits so as to include a portion of the territory of the proposed district, did not change the description given by the field notes in the order and notice of election. If the ordinance had affected a valid extension of the city limits, the limits of the drainage district which were definitely known and fixed in all of the proceedings creating the district as the south line of the city limits as it existed at the time the petition was filed and the order and notice of election made and given wou'd not be affected thereby, since the statute expressly authorizes drainage districts to include in its limits territory within the corporate limits of cities and towns.

The ordinance extending the city limits did not, however, affect such extension. Hunt v. Atkinson (Tex. Com. App.) 12 S.W.(2d) 142. Such extension of the city limits only became valid and effective by the vote at the election held for that purpose on December 29, 1922, the day after the election for the creation of the drainage district.

It certainly cannot be held that an invalid attempt of the city to extend its limits could have the effect of changing the description of the limits of the drainage district contained in all of the proceedings by which the district was created.

In so far as appellants' suit against the city of Houston is concerned, we think the trial court correctly held that appellants' claim that the levy of taxes by the city upon their property for all city purposes, including city drainage, was the levy of taxes upon this property by the drainage district of double taxation, and a violation of the provision that taxation should be equal and uniform, cannot be sustained.

The following counter proposition presented by the appellee city of Houston is, we think, a correct statement of law upon this question and is fully sustained by the authorities cited in its support: "Since the City of Houston and Harris County Drainage District No. 12 are separate entities created under separate provisions of the Constitution of the State of Texas, to each of which has been delegated the power to assess and collect taxes for the purpose of accomplishing the several functions for which they were organized, the fact that a part of the property included in the territorial limits of the one is also included in the other does not subject such property to double taxation nor contravene the Constitutional rule that taxes must be equal and uniform, Const. art. 8, and there is, therefore, no duty upon the City to assume any part of the bonded debt of the Drainage District nor make any adjustment of taxes for appellants. Constitution of Texas, article 11, § 5; article 7, § 3; article 3, § 52; article 8097, Texas Revised Civil Statutes, 1925; Robertson v. Key (Tex. Civ. App.) 240 S. W. 1013; Holt v. State (Tex. Civ. App.) 176 S. W. 743; Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871; Moore v. Commissioners' Court of Bell County (Tex. Civ. App.) 175 S. W. 849; Harris County Drainage District No. 12 v. City of Houston (Tex. Com. App.) 35 S.W.(2d) 118."

In accordance with the foregoing conclusions, the judgment of the trial court has been affirmed.

Affirmed.

LANE, J., not sitting.